The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, thank you. We'll begin with the first case, Claudio De Simone v. VSL Pharmaceuticals, and Mr. Brennan will hear from you first. Thank you, Your Honor. Robert Brennan, on behalf of Appellant Alpha Sigma USA, Inc. This is the latest skirmish in a long-running battle relating to two competing probiotic products, VSL No. 3 owned by VSL Pharmaceuticals, Inc. and distributed in the U.S. by Alpha Sigma and this biome owned and distributed by Exigy Pharma LLC. We're here today on Alpha Sigma and VSL's appeal of the District Court's order finding them in civil contempt of a permanent injunction that was issued following a jury verdict finding Alpha Sigma having committed false advertising in violation of the Federal Plan of Act. Now, there's four elements that must be proven by clear and convincing evidence in order to find... Mr. Brennan, Mr. Brennan, good morning, Judge Diaz. Good morning, Judge. I'm going to let you get to your argument here, but I do have a procedural question related to the supplemental briefing that the panel requested on the status of the attorney fee request. Can you tell me or tell the panel exactly what the District Court is doing or not doing with respect to the fee award? The District Court is... It has pending before it a motion for award of fees at an opposition, which it is holding, presumably pending an outcome on the appeal of the merits of the contempt award. Has the District Court said that or is that your supposition that it's waiting to hear what we have to say about this? That is my supposition. There's not been anything issued directly to that effect. Okay. The reason I... I mean, it just seems inefficient from my perspective to hear this appeal and then maybe that you all may come to some sort of an agreement on the fee issue. It doesn't seem like it given the history of this case, but we may well see it again. And that's, it seems to me... Well, there's a question. I think there's an open question, although I know you take a different view whether or not this appeal is actually final, given that the fee award is still left to be decided. But at a minimum, it just seems to not be the most sufficient way to do things. Well, Your Honor, we think on the basis of the authorities that both sides filed in their supplemental memorandum that it clearly is an appealable order. And as Your Honor knows, one of the issues I'm going to argue here momentarily is that in this circuit, at least, a fees cannot be awarded in the absence of a finding of a willful contempt. And there was no such finding in this case. And that is an error of law that the District Court committed. And if the court agrees with us on that, then there will not... That will moot the pending motion for award of fees. So in that sense, it would be the most efficient for us to proceed right now. All right. Let me ask you another fundamental question. If I understand, the injunction was entered against Alpha Sigma and Leadeant. Yet, the court found that LCL and VSL violated the injunction, but it was never named as one of the persons enjoined. What's your response to that? I think that's better left to VSL's counsel to respond to, Your Honor, Mr. Broughton, who's prepared to argue after my argument is over. Well, this is pretty fundamental. And I looked at all the briefs and I was disappointed that nobody in the briefs explained to me. Everybody noted that the injunction was entered against Alpha Sigma and Leadeant. And yet, we have VSL who was deliberately left out of the and not only that, no counsel seemed to link conduct to any particular defendant. I mean, everybody used this collective term of parties, VSL parties. But yet, we have individual corporations that are being held in contempt. And the ones being held in contempt don't match the I'd just like some explanation for that. And I'm not sure passing it off ought to be the right answer. So I'll address it then, Your Honor. I think, again, and I have to defer to my co-counsel who represents VSL. But my understanding is VSL would certainly not, even though it's not named in the injunction, would not take the position that it could go out and, for example, issue promotional advertisements tomorrow or today. That's not the issue. That's not the issue. The issue here is contempt for failing to obey an injunction. And the injunction on its face and everybody recites in its facts pretty clearly that the injunction was against Alpha Sigma and Leadeant. And VSL was a party but was not named as part of the persons in joint. And that's for some good reasons, which I don't need to go into. But and nobody, at least to my knowledge, broke down the corporate veil or suggested that the corporations are responsible for each other's conduct. They clearly are not. And one of the arguments that we made in our briefing and that I would make here is that the court has seemingly said that it's ordering the VSL parties to pay attorneys' fees and it found the VSL parties to be contempt. And we do push back on that. They are independent entities. My client is not responsible for the independent actions of the current company of VSL and doesn't think that it should, to the extent that... No, that's a later question I do want to ask also. I mean, Actiel was the person that issued the press release and they quoted an official of VSL, but that's hearsay issued by Actiel, which is a parent. And I didn't see anybody suggesting that we should attribute the parent's conduct to the subsidiary. Maybe we should, but I didn't see it in the district court or in the I need to comment on this. I found them very unhelpful in terms of trying to figure out who did what at what time and how do we assess whether there was a violation that was justified and the nature of the conduct and so forth. Everybody just seems to spray conduct to the VSL parties. And that's a handy tool to cover instead of saying who did what and then assessing each party. Anyway, that's my problem. And all of you, I'm going to ask you the same thing. So, you can continue with the argument, but it seems to me we ought to be focusing on number one, who was enjoined? What were they enjoined from doing? And did they violate the injunction? And the way the briefs are written, it would take quite an effort to sort it all out. Okay. Well, Your Honor, let me proceed to tell you why Alpha Sigma, at least, shouldn't be held in contempt with respect to the actions that were attributed to it. And the first of those was the fact that YouTube video remained posted online. The grounds for a motion, as we know, are required to be stated in the memo in support of the motion. And the YouTube video issue was not raised until the first time in the exegetes reply memo with no explanation for the delay. And thus, those grounds we submit were not properly before the district court on this motion. And therefore, it was error of law for the court to even consider those YouTube videos. Let me ask you, what is the standard? I haven't understood the standard very well either. An injunction is issued in joining parties from doing specific conduct. If a party violates the injunction accidentally, is that party in contempt? Or if the party violates the injunction recklessly, is that party in contempt? Or if the party does it deliberately, is there a standard that's required to find somebody in contempt of an injunction? There is. There's four factors. There needs to be a valid decree. It needs to be in favor of the movement. And it needs to be violated. Excuse me. There has to be the alleged contemporary by its conduct has to violate the terms of the decree with at least constructive knowledge of that violation. And that cannot be found if there's fair ground for doubt as to wrongfulness of the conduct of the question. Willfulness itself is not a requirement. That just attributes the conduct, which is pretty straightforward. My question is, what type of conduct is necessary? Is there any kind of immense way necessary to violate an injunction, not to violate the injunction, to receive the contempt citation for violating? Not not in a filing for civil contempt. There's not. It can be done accidentally. As long as you it's an accident that you have at least constructive knowledge of the fact that it's violating a court order. Yeah, but if it's purely neglectful, and, you know, if it violates the order, and you've got constructive knowledge of it, then you can be held in civil contempt. Willfulness is not a requirement. That gets willfulness is a requirement if, as a additional remedy, in addition to making an award based upon any harm that's proven by clear and convincing evidence, you want to also award attorney's fees incurred in connection with bringing the motion for contempt, then it has to be willful. But I can see I've already amounted. Can I ask you about the, you were talking about the YouTube video, and you're concerned that it was raised in the server plot, and I get that. On the other hand, there, I mean, the statement that was of concern to the district court in that YouTube video was essentially the same kind of allegedly contemptuous statement that the VSL number three was clinically proven, which is essentially the same statement that, as I understand, it appeared in the Facebook comment. That's the first point. And second, I get the point that this was raised in a reply, but I think the district court took 10 months to actually enter an order in this case. And obviously, you must have read the reply, and you made no effort to file a motion to, you know, to alert the court to this concern or file a server reply. So, under those circumstances, why should we have overturned the district court's ruling on that point? You know, I think that, addressing your second question, I think that, to suggest that it's the onus shifts to the party that's, you know, we found an opposition, we responded to the grounds they made in their motion. They improperly raised new, additional grounds that aren't new. They're at least two and a half years to eight years old in their reply. Yeah, but you're before, you're before the district court. You've tried cases. This is fluid. I mean, you come back and you're surprised by a reply. You say, Judge, I want to file a server reply, and I want to file a supplemental memo on this issue, or you just raise it. You know, district judges are taking that into account, and the court could have enforced it if he thought you were surprised. But that's not something that we addressed, because the court did address it. The court addressed it and chose to address it, and the only argument you could make is you had no opportunity to address the point. But as Judge Diaz said, that's not the case at all. We just have, your argument is very formulistic that the district court is bound to accept an opening brief, a reply brief, an answer brief, and a reply. And that's not so. I mean, I tried cases in the district court. We had server replies and server replies and people objecting to this and answering each other, and the court has to take charge if it wants to. But in this case, the court addressed it, and you never raised a point about it. You know, again, I think that it shifts the onus. I recognize that district court litigation. This is something you have to present to the district court. The question is, did the district court treat you unfairly? And you had the full opportunity to address it. The fact that district court didn't adhere to a three-memo process doesn't raise any rights that you have on appeal, does it? I disagree. I think the district court did treat us unfairly. We're entitled to, you know, we want, we're here on a request. Did you try to address it? Did you try to address it? With a letter? With a motion? With anything? A motion to file a SIR reply? Did you do that? We did not. But we're entitled to rely on the fact that the court is going to abide by its own rules. And if the rule says, Judge Quattlebaum? Yeah, thank you, sir. And I didn't mean to cut you off, but I think we understand your position on that. But my question relates to the Facebook, the violations of the alleged Facebook. And I've read the briefs, but my question is pretty simple. Is there any question that your client was responsible for the information in the Facebook messages? Are you contesting whether that is an Alpha Sigma issue as opposed to someone else? We're not contesting that, Your Honor. We don't, it's not directed by Alpha Sigma, but Alpha Sigma has had agents that are vendors that runs the Facebook. And I didn't mean to, and I'm not minimizing your other issues. I just want to make sure I understand that particular factual issue. So, thank you very much. So, there's been a lot of questions. I'm well beyond even what I had left for rebuttal, but I'd like to address a few brief points about no finding of harm with respect to the YouTube videos, the healthcare provider letter, and the Facebook postings. Why don't you reserve that for your rebuttal? You have some rebuttal, don't you? I've got two minutes. Two minutes, okay. Why don't we hear from Mr. Broughton? Thank you, Your Honor. Turner Broughton here on behalf of VSO Pharmaceuticals. And Your Honor, I want to jump in and address two questions that I believe that you asked. The first was about the injunction and the parties. And at the trial of this action, Your Honor, it was leading an Alpha Sigma who were found to have engaged in false advertising. And so, to the extent that the order below dealt with false advertising, it did so against only those parties and not VSO Pharmaceuticals because it was not itself found to have engaged in false advertising at the trial court level. And so, I believe that's why the trial court order addresses those two parties as the parties issued the injunction against those two parties as the false advertising because those are the two parties that have. As to the standard question... Let me just follow up on that. If that's so, where does the judge get the right to hold VSO in contempt when it never gave VSO notice that it was enjoined? Your Honor, and there are statements that were made at the conference in which VSO's counsel acknowledged that it would be... I agree with Your Honor that in terms of the order itself, the order does not put VSO on notice, although there is a statement, which I'm sure Mr. Shulman will address from counsel at the trial level, who acknowledged that VSO should not, as Mr. Brennan said, be able to go out and engage in them and you can get a remedy. This case is narrowly with respect to the violation of a court order of an injunction and VSO was not named in that order. That's correct, Your Honor. That is absolutely correct. And so, it is not a party to that order. I would also... The second question Your Honor asked was about the standard and the standard which is found in Taggart v Lorenzen is it is objectively unreasonable. So, it's an objective standard, but if you look at the Taggart case from the United States Supreme Court, it really talks about whether the contumacious conduct or the statement at issue or statements that are contemptuous were objectively unreasonable. And so, that's the standard by which each of these statements should be judged, which is was the contempt nor objectively unreasonable in the statements or other contumacious conduct in which they engaged. Does that include any kind of mens rea? In other words, does the person have to know that he was, when he conducted himself, that he was violating the injunction or does he have to... In other words, is there any level of... You used the word contumacious. That is, if that's the standard, contumacious is a level of intent. So, Your Honor, I believe in the Taggart case, again, which is the best case on this, the court essentially acknowledged that necessarily determinative, that it can be factored into a finding of contempt, but that ultimately a party's subjective intent is not determinative of that finding. So, turning to... Mr. Broughton, could I ask maybe a just orientation type question? With respect to the various categories of conduct that are addressed by the district court, which ones is VSL factually... I'm not... Did VSL actually do? Not whether they're... I know the press release, I think, is what I gathered from the briefs. Can you address whether, and I know your colleague in opposition may have views on this, but from VSL's perspective, which of the conduct besides the press release is it responsible for? None, Your Honor. It's the press release. Okay. All right. Thank you. Yes, Your Honor. And so, and I see that I've got about a minute left, so I want to focus. There really were three questions, and Judge Niemeyer, you pointed out the point that VSL itself is not bound by the express terms of the injunction. The trial court itself as well, there really were three questions. In what context was the offending word published? What is the standard by which the offending word, VSL's use of generic, judged? And was VSL's its press release was in compliance with the court's order objectively unreasonable? And it's important to note, at Joint Appendix 690, the trial court noted the following, quote, Guarna Statement, who was Actial, the parent company of VSL Pharmaceutical's CEO, in describing litigation in Italy, noted, Guarna Statement was limited to a single occasion in a press release not focused on establishing equivalence between VSL-3 and the decimony formulation. And so, VSL Pharmaceuticals was found in contempt as a result of a statement by Actial, in which the trial court acknowledged that the press release was not focused on establishing equivalence, and that was the very purpose of the injunction itself, which was- How did the court impute Actial's press release to VSL? And Judge Niemeyer, I'm beyond time, may I continue? Yes, please. It, because Mr. Guarna is both the CEO of VSL Pharmaceuticals, which is the American company, as well as of Actial Pharmaceutical, which is an Italian company. And so he was, he was acting on behalf of Actial, though, when he issued the press release, right? Correct, Your Honor, because this concerned a verdict in Italy, and it related to Actial's, a Roman court finding that Actial was a rightful owner of eight strains that Claudio had improperly transferred through Luigi Mento to himself. And I see I'm out of time at this point. Okay, thank you. We'll hear from Mr. Schulman now. Good morning to the court. Jeremy Schulman on behalf of the appellees, Claudio DiSimone and Exigy Pharma. Let me start by addressing Judge Niemeyer's question. VSL's counsel in the court below expressly acknowledged that the injunction, that they were bound by the injunction. That's what their counsel acknowledged. And it flows from Rule 65, which states that the injunction extends to the parties named, and also those acting in active concert or participation with those parties. And so, the court was, and I think the court was incorporating in its contempt finding its prior determinations, which included determination about the role that VSL and Alpha Sigma play with one another in jointly marketing the product. So, there was extensive evidence that came out through the course of the case at trial and elsewhere that while Alpha Sigma may have for marketing, VSL retained under their license arrangement a role in marketing as well, in helping to develop scientific substantiation. But VSL was a party to the case, and the court chose not to enjoin VSL. Because the... And that appeared to be deliberate on the court's part. It was, I think it was deliberate, Your Honor, because our claim for false advertising was asserted only against Alpha Sigma and Ledient, because they were the ones who were primarily engaged in the marketing that we were testing at trial. So, the injunction that we sought was targeted against those key marketing agents. However, because VSL... Do you understand that this contempt is being held against Ledient also? No, Ledient was not held in contempt. We do not seek contempt against Ledient because... Well, isn't that telling if the court issues an injunction against Alpha Sigma and Ledient, and yet groups them together as the VSL parties, it excludes Ledient, possibly because there wasn't any conduct attributed to Ledient. I don't believe Ledient was included in the order, Your Honor. I think that that was not in the contempt order, but it was in the injunction. Correct. Because, well, because Ledient was initially, for about a month or so, falsely advertising the product. Then they sold their rights to Alpha Sigma, and Alpha Sigma took over and continued that false advertising. So, that's the evidence. Yes. Mr. Shulman, if I could just follow up on what you... I think I understand the basis for seeking contempt relief against VCL. It sounds like at the hearing on this, VSL says, yeah, we acknowledge we would be bound by that. Correct. And, you know, I can kind of imagine that it would be a, you know, kind of tough argument to go in and say affiliated company, you know, is somehow scot-free from violating an order. I get that. But is that the same as... and what's the authority, I guess, for equating that, which seems might be arguably a practical sort of thing. You know, we'd look silly if we said we could do something. But is that the same as saying they're subject to a contempt order that did not apply to an injunctive order that did not apply to them? So, you see, I'm trying to say that I get... are those one and the same? Well, they are, Judge Qualibon, because the injunction did apply to VSL. I'm reading directly from Federal Rule 65D. It says persons bound, an injunctive order binds only the following who the parties, A, the parties, B, the party's officers, agents, etc., C, other persons who are in active concert or participation with the others. So... But there's two problems with that. One is VSL was a party before the court. And so the injunction doesn't have to rely on the other. As a matter of fact, the indications would be VSL was excluded because VSL was a party and the court chose not to join it. That's number one. And then number two, the court never explained that it was holding VSL liable based on that aspect of Rule 65, I don't think. Well, it didn't need to because VSL's counsel was readily admitting that they're bound. So it wasn't a contested issue. So we have an order of an injunction that was not issued deliberately against VSL counsel makes this statement, which is ambiguous, but it makes a statement. All of a sudden we now have an injunction against VSL without a formal order. And then we have a contempt order saying it violated that order. Before the, even the motion for contempt was permitted to be made, we had a pre-motion conference where the court was trying to assess these very questions, Your Honor. And we would have had. That's even more, that's even more indicative. In other words, if you brought it to the court's attention, the court still didn't hold VSL to the injunction. And then still, of course, there's no injunction. There's no formal order against VSL. And the question is whether counsel stands up and said, I'm willing to be held in contempt. They didn't say that. I'm a little surprised that it wasn't raised, but. Well, what I'm saying is. It was raised indirectly, but. What I'm suggesting, Your Honor, is that this question of whether or not VSL was acting in active concert of participation did not need to be litigated because VSL's counsel readily acknowledged that they were bound. There wasn't any question to litigate as to whether or not the injunction would extend to them. They were acknowledging that it did. They were challenging our contempt motion on different grounds. They were challenging it by saying there was no contempt in Mr. Guarna's press release. So, I mean, what you're addressing now, Your Honor, are arguments that VSL itself never made at any point in time, not even in its appellate briefing. They're not saying they're not bound by the injunction. This is an argument that Your Honor is bringing up sua sponte. They're saying they're not bound because they shouldn't be held liable for. Yes, you're not appreciating my difficulty. My difficulty is VSL was a party. And whether VSL's imprivity with the others or is aware of conduct or should be attributed to the conduct was all taken into account when the injunction was entered. This is not where you enter an injunction against the parties and then the injunction reaches people who are privity with that. This is a case where you have three parties and the court enjoins only two. And then there's a motion to hold the two parties in contempt. That's all that could be done because the court deliberately excluded VSL and I guess they hold them in contempt based on VSL's parents' press release. That's the reach of this. I think, Your Honor, I don't think that the court deliberately excluded anybody. The court was requested that injunction against Alpha Sigma and Lydian, but lots of other parties or persons could potentially be looped into such an injunction. But why didn't you file a motion to hold VSL in contempt? I mean, VSL and... We did. Well, VSL, you did. That's right. You didn't hold Lydian. Lydian wasn't engaged in... Lydian sold its interests and left the whole scene years earlier. So, they didn't do anything wrong with regard to this to complying with this injunction. But Alpha Sigma did. Judge Baldwin? Mr. Shulman, can I ask a different question? You've alleged several categories of conduct and, you know, to me, and I realize you have an issue about whether they were argued below and so I appreciate those issues. But on the merits, assume, just for discussion purposes, that I have, you know, concerns or that we have concerns about the willfulness of the medical, the health care letter issue. Assume we have concerns on everything but the Facebook messages, okay? Okay. Do you need us to find in your favor on all of the alleged contemptuous conduct or some of it? Help us understand what we need to find with respect to the varying categories of conduct. Okay. So, Judge Qualabam, as this court held in Rainbow, the Rainbow case that we cite, which is a 2018 decision, and also in the Klopp decision, which I believe is 2020, a single violation is sufficient for finding of contempt. So, where there may be half a dozen or to justify the finding of contempt. And the, I would also note that we don't agree that willfulness is a required element. I think that's clearly not the case as found in the general decision of this court and various other decisions. Can I follow up on that point, Mr. Shulman? So, if that's true, then what about the concern that the order doesn't distinguish in terms of liability among the parties? You've got these four separate categories of allegedly contemptuous behavior, which can be logically attributed to one party. I think three of the four, the party responsible was Alpha Sigma. The press release can be attributed to VSL, yet the attorneys fee award is lumped together. They're jointly liable. So, what's the, isn't that concerning? I think it's not concerning for a few reasons, Your Honor. Number one, they didn't contest that in the court below. So, most of the arguments that you're seeing now raised were not raised before. And in fact, they've, there has been briefing on the attorneys, on the quantum of attorneys fees. And in their brief, they were and did not contest most of the alleged violations. That's page 701 of the joint appendix. So, they didn't contest almost any of these violations in the court below, including on this issue that Judge Diaz, you raised, which is them being lumped together, which we did repeatedly in our opening motion on the contempt motion, because they do act in the marketing of this product. They didn't seek to oppose our motion on the grounds that they shouldn't be lumped together. And now they're raising this as a post hoc reason to attack the contempt order. But I also would say, based on the principle, Judge Diaz, that you only need to find one violation to justify contempt. We have at least one violation against both of those parties. So, we have the press release against VSL and multiple instances of direct violation of the injunction by Alpha Sigma. So, I think it's material. Is there any, I mean, I know you would, you know, you're seeking contempt against VSL and Alpha Sigma. I mean, you know, and think you're entitled to, and I appreciate the arguments, and we'll consider those. But what's the consequence if we decide, hey, I get your argument, they're acting in concert, but we just can't award, affirm a contempt order against the entity that had not been enjoined in the first place. And so, we say maybe Alpha Sigma is subject to it, but not VSL. What's the practical harm to you of an order like that? I think the practical harm, Your Honor, is that VSL will then, the parties will then use that as an invitation for people like Mr. Guarna to continue putting out false advertising messages. So, I mean, I think it's important to remember this is a serious medical product. There are, there is legitimate confusion in the marketplace. We put two affidavits in before the district court showing people seriously harmed by this confusion. They were taking VSL until 2016. It was working fine when it was the original formulation, and all of a sudden, mysteriously, it stopped working. And people were really suffering as a result of that, not knowing why, until they eventually figured it out several years later. So, it would be, we can tell you because you've seen how aggressive and bold Mr. Guarna in particular can be, there was a second contempt motion that we filed, and it's not in the record, so I won't go into details, but this is a concern about whether Mr. Guarna would then feel at liberty to continue putting out press releases, mischaracterizing and confusing consumers further on the relationship between the new formula and the original formula. And I think the bottom line continues to be, Your Honor, it would also set, I think, a dangerous precedent because it would essentially rewrite Rule 65. Rule 65 says that injunctions could apply to persons who are not named as parties to the injunction. Yeah, but don't you, on that issue, I mean, I've looked at, I mean, I think that's right. I mean, certainly that's what the rule says, but aren't you obligated, and maybe I'm wrong on this, but did you categorize VSL in your motion for contempt as a party under Rule 65 in that fashion? Is that the way you? I don't recall if we referenced Rule 65. Again, their counsel readily acknowledged that they're bound by that, so there wasn't a need for that. But also, Rule 65 itself says it's binding on those who receive actual notice by personal service or otherwise. So the rule is focused on attaching responsibility to those who have notice. It would be unfair, obviously, if people did not have notice of it, but no one can argue VSL was unaware, you know, of this injunction, and they readily agreed that they were bound by it. So I don't think there's any unfairness to VSL, but on the other hand, there would be, I think, potentially dangerous implications for consumers and for exegee. I mean, there was a reason this injunction was fashioned. This court, this panel affirmed it, recognizing that exegee stood to suffer, had suffered, and would continue to suffer harm by this false association between the new formula and the original formula. And so, you know, we would respectfully request that the court, you know, look at that and take steps to enforce the injunction in a way that exegee's interest and the interest of the public will be protected. I see I'm winding down on my time. I would say that it's important to remember, while there wasn't a finding of willfulness because there didn't need to be in our view, the court did find that the violations were blatant and persistent, and that the efforts at compliance were, quote, notably deficient. The court found that it appeared the Alpha Sigma representatives were working off of a script, and this is a script that, you know, it had blatant, obvious violations of the injunction. So we're talking about parties of, you know, who were very well aware of what the injunction required, and they allowed their representatives to engage in these blatant, notably deficient, and persistent violations. So, you know, why we would want to condone this kind of behavior, you know, I don't understand because, and they raise a number of specious arguments we have in the court below, they suggest that somehow this amounted to a criminal contempt finding when they weren't given appropriate process. I think any reasonable reading of Judge Chuang's order shows that it was measured, it was limited, the relief was coercive and which they largely acknowledge were violations. They said it was inadvertent, and now they're saying we didn't know what our own representatives who were managing the Facebook page were doing. I think the Rainbow case makes clear that we impute knowledge of one's own website, known web platforms, to that party, and that's the constructive. Let me ask one more question that's kind of going back. I just want to make sure I understand it. So it seems to me with respect to VSL, we have the issue of whether they were enjoined in the first place, and then we have another issue as to whether the acts that they didn't do, say for example the Facebook conduct, is attributable to them. On the second point, is there any authority or do you contend that for us to find VSL liable, we have to first say that under Rule 65d they are a party acting with concert. Then we look at the conduct attributable to them, which is the press release, and we can make our decision on that. Are you saying that even if we were to find the press release not sufficient to be contemptuous, they should be held responsible for the other violations that they did not carry out? We do say that, Your Honor. Number one, all of these arguments that you just recited were waived because they weren't raised in the court below, and some of them weren't even raised in the appeal. But beyond that, again, Judge Chuang incorporated into his contempt findings his prior findings, and those prior findings included determinations that VSL and Alpha Sigma were working in close concert with one another in the entire marketing effort. They had well-defined roles, but both of them participated in a coordinated manner in the marketing effort. So it's not, it shouldn't be a surprise to either those parties that they would be held responsible for the actions of the other, and if you're going to oppose a motion saying there shouldn't be joint and several liability, you should be expected to actually raise that point in your briefing, and they never did. So with that, Your Honor, I see my time has expired. All right. Thank you, Mr. Shulman. Let's go to Mr. Brannon. Thank you, Your Honor. I apologize. I have to comment. We repeated our assertion that the VSL-3 product is harming consumers based upon two affidavits when tens of thousands, if not hundreds of thousands of doses have been distributed and taken in the years since January 2016, and to say that two affidavits... That's a difficult argument for you to make when you repeatedly go on in response to questions about the product misleading the public, and to me, there's no doubt that at least the Facebook left things in a state of confusion, which is demonstrable harm. It's the guts of the whole cause of action, and I think you're picking some of your very weakest arguments, but you can go ahead and make it. Well, Your Honor, as far as Facebook goes, I'll just leave it at this. There was no evidence, convincing evidence of any harm by the brief period of time it was brought up. As soon as they were notified, we took them down. With respect to the YouTube videos, we don't agree that those are Alpha Sigma's responsibility because most of them were posted, were put on YouTube at a time when Professor DeSimone was the CEO of VSL going back to December of 2012, and most of those videos talk about the so-called DeSimone formulation, so there's no misrepresentation, or at least no evidence of any clear and convincing evidence in this record of any misrepresentations with respect to any of those videos, but the fact is they were posted two and a half to eight years, seven years prior to the injunction. They were not something that we did after the injunction, and if you look at page 438... Well, is it the allegation that you the allegations we failed to take it down? Well, that doesn't go to what you were just arguing. The question is, why didn't you take them down? No one had, in seven years of litigation, going back to, all these videos were posted before the event of complaint, two years before the trial. No one ever said unless this was her. Mr. Brennan, I'm granting you that, but I'd like you to address why, what defense do you have for not taking down the YouTube after the litigation was over and the injunction was issued? It had not been on anybody's radar that these were causing harm because they'd never been raised in seven years of litigation. That's what I can say for that. With respect to the health claims letter, the evidence is that from our IT systems person took reasonable steps to make sure that that letter specifically was not available to the public. It certainly was not readily accessible or directed to consumers after the injunction because counsel, per exergy, was able to find it by searching on Google. VSL litigation does not change the fact that we took reasonable steps and it doesn't mean that we violated the injunction. But with respect to the harm on that, there's no evidence that anybody saw it other than counsel after the injunction was issued. Same thing with the YouTube videos. Not a single piece of evidence to show that anyone saw that post-injunction. But we took the health claims letter down the moment they told us that they found this link. We figured out how the link worked. We took it down. They republished it. They filed it. They didn't file it under seal. Somebody searching today for VSL litigation-related documents can go on Pacer and get the copy that they filed in this court in the joint record extract or the record below. And it begs the question, if it's available through an obscure link that we failed to find, no one has identified a reasonable basis for what we should have done that we would have found it. That harms them. But it doesn't harm when they intentionally publish it. All right. Let's hear from Mr. Frotton. Yes, Your Honor. Thank you. I'd just like address a few things that you all have raised in your questions. First of all, Rule 65 was not argued below. And there's no evidence that VSL and Alpha Sigma were acting in concert as it concerned any of the four acts of alleged contumacious conduct. Nor are we responsible for Alpha Sigma's actions. And there's no evidence that we had anything to do with it. As to harm, which I know the court is focused on, the trial court at page 690 of the Joint Appendix note that it had inferred harm. And if you think about the injunction here and what it enjoined, it enjoined Alpha Sigma inledient from committing certain acts. And so to infer harm from a Lanham Act violation, which is a preponderance of the evidence standard, when we've got a clear and convincing evidence standard of harm, and infer that regarding a press release that Acquial, VSL's parent company, made in which the trial court itself noted Warner's statement was limited to a single occasion in a press release not focused on establishing equivalence between VSL 3 and the De Simone formulation. And so the trial court itself acknowledged that the very press release that's at issue here was not focused on establishing equivalence, which was the very basis for the injunction itself. I'm happy to answer any questions the court may have. Otherwise, we respectfully request that the Fourth Circuit, the discipline, will vacate the trial court's finding of contempt against VSL pharmaceuticals. Let me ask you, how do you take the statement that VSL acknowledged to the court that it could be held liable under the injunction? So, your honor, that's found at pages 475 of through 477 of the joint appendix. And in that, what Mr. Nelson, on behalf of VSL, acknowledged was that to the extent that it was acting in concert with Alpha Sigma, that it would be responsible for those actions. And so to the extent, and there is no evidence that any of these alleged acts of contempt were done in concert with Alpha Sigma. And so I would generally acknowledge that under Rule 65, assuming that had been argued, that VSL itself can't go out and violate the injunction. There simply was no violation here. And again, it's not bound by the terms of the injunction itself. Mr. Brock, just to follow up, was that an argument made to the district court? Your honor, that argument was not made at the district court level. All right. Thank you. All right. Thank you, counsel. We appreciate your arguments. And as you know, the practice in the Fourth Circuit is to come down and shake your hands and thank for your arguments and establish the professionalism of the bench and the bar goes back to Judge Parker in the 1930s. And we like that tradition. So this will have to serve as our greetings and our handshaking through the Zoom. It's not adequate, we know, but we'll see you again in court. Have a good day. Thank you, your honor.
judges: Paul V. Niemeyer, Albert Diaz, A. Marvin Quattlebaum Jr.